**UNITED STATES of America**

v.

**Presley L. BLAKE, Jr.**

**Crim. A. No. J87–00099(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 15, 1988.

Tommy McWilliams, Townsend, McWilliams & Holladay, Indianola, Miss., Fred D. Thompson and Sabin R. Thompson, Thompson & Bussart, Nashville, Tenn., for plaintiff.

Nicholas B. Phillips, Asst. U.S. Atty., Jackson, Miss., for defendant.

MEMORANDUM OPINION

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Presley L. Blake, Jr. to dismiss portions of the indictment against him in this cause. The government filed timely response to the motion and upon consideration of the issues raised by defendant, the court is of the opinion that his motion is well taken and should be granted.

The indictment, which consists of six counts, charges defendant with various violations based on allegations that the de-

fendant paid fees to officers, directors and employees of the Mississippi Bank in order to procure loans from the bank. In count one of the indictment, the defendant is charged with aiding, abetting, counselling and conspiring with employees of the Mississippi Bank to violate 18 U.S.C. § 1006 (1976) which prohibits officers, agents or employees of certain financial institutions from participating, sharing or receiving, directly or indirectly, any money, profit, property or benefits through any transaction, loan, commission or contract of the financial institution. In his motion as it pertains to count one, defendant argues that the Mississippi Bank is not a financial institution within the coverage of Section 1006 and that the statute is therefore inapplicable. The government has conceded the correctness of defendant's position and accordingly, the court is of the opinion and so finds that that part of count one of the indictment charging conspiracy to violate 18 U.S.C. § 1006 should be dismissed.

 Counts two through six charge defendant with violations of the Travel Act, 18 U.S.C. § 1952(a)(3) (Supp.1987). The substance of the allegations contained in those counts is that defendant made certain payments, by check, to officers, directors and employees of the Mississippi Bank in return for loans from the bank and in doing so used a facility in interstate commerce with the intent to promote, manage or carry on a violation of 18 U.S.C. § 215 (Supp.1987), and thereafter performed acts to promote, manage, carry on and facilitate a violation of 18 U.S.C. § 215. The Travel Act, 18 U.S.C. § 1952(a)(3), provides that

(a) whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to

(3) promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years or both.

For there to have been a violation of the Travel Act, it is necessary that the defendant have traveled in interstate commerce or used "any facility in interstate or foreign commerce" to carry on the charged unlawful activity. That is, under the Travel Act, there is a requirement that there be some nexus between the use of the facility in interstate commerce and the act charged, here bribery. The question for decision before the court, then, is whether the clearing of checks through the federal reserve system is a sufficient interstate nexus to support jurisdiction under the Travel Act. Under the particular facts presented, the court is of the opinion that it is not.

The sole basis upon which Travel Act jurisdiction is predicated is the clearing of five checks described in counts two through six of the indictment through the Federal Reserve Bank in Memphis, Tennessee and New Orleans, Louisiana. Each of the checks was drawn on the Bank of Greenwood, a branch of First National Bank in Jackson, Mississippi, during the years 1982 and 1983. Four of the checks were processed for clearing through the Federal Reserve Bank in Memphis; one was processed through the Federal Reserve Bank in New Orleans. That is, the checks were allegedly given by one Mississippi resident to other Mississippi residents and were each drawn on a Mississippi bank. The only connection with interstate commerce was the fortuitous clearing of the checks through federal reserve banks outside the State of Mississippi.

In *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), the Supreme Court interpreted the Travel Act as inapplicable where the interstate activity was purely incidental to the illegal operation. *Rewis*, 401 U.S. at 813, 91 S.Ct. at 1060. Specifically, the Court held that Travel Act jurisdiction was lacking where the only interstate element was the fact that out-of-state customers patronized the defendant's gambling establishment. The Court observed that

an expansive Travel Act would alter sensitive federal-state relationships, could overextend limited federal police re-

sources, and might well produce situations in which the geographic origin of customers, a matter of happenstance, would transform relatively minor state offenses into federal felonies.

*Id.* at 812, 91 S.Ct. at 1059. Accepting, at least for purposes of argument, that the federal reserve system is an interstate facility, and the clearing of checks through that system is a use, even if inadvertent, of such facility, the court is nevertheless of the opinion that the interstate nexus in the case at bar is too tenuous to support the exercise of jurisdiction.

This case closely resembles *United States v. Isaacs*, 493 F.2d 1124 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974), in which the defendant was indicted for his involvement in a scheme to bribe, among others, the governor of Illinois. In *Isaacs*, as in the present case, federal jurisdiction was founded upon the use of the federal reserve system; three of the checks had been drawn on a local bank and had been deposited by their recipients in local banks, but the checks had cleared through a federal reserve bank outside the state. The court there concluded that "the use of interstate facilities here was so minimal, incidental, and fortuitous, and so peripheral to the activities of [defendants] and other participants in this bribery scheme, that it was error to submit [the Travel Act counts] to the jury. *Isaacs*, 493 F.2d at 1146. Similarly, in *United States v. Altobella*, 442 F.2d 310 (7th Cir. 1971), jurisdiction was based upon the defendants' having accepted, in an extortion scheme, a check from their victim written on an out-of-state bank, and on their having cashed that check. There, the court held that while the defendants had committed a crime, it was not a federal crime since the use of interstate facilities, *i.e.*, the federal reserve system, "was purely incidental to appellants' sordid scheme." *Altobella*, 442 F.2d at 315.

In this circuit, while there are cases that discuss the interstate aspect of the Travel Act, none has addressed the issue presented in the case at bar. In *United States v. Perrin*, 580 F.2d 730 (5th Cir.1978), *aff'd*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979), the court concluded that there was a sufficient interstate nexus to establish jurisdiction under the Travel Act where the defendant, in a scheme involving theft of certain seismic exploration charts, made an interstate phone call from Louisiana to Texas for the purpose of ordering corresponding gravity maps. In the face of an argument by the defendant that the maps were not an essential part of the scheme, the court stated that it was not necessary to determine whether the maps were essential to the scheme since

> it is undisputed by the appellants that the gravity maps would have been used to exploit the stolen data (and thus) the requirements for jurisdiction under the Travel Act are met. *There is no requirement that the use of interstate facilities be essential to the scheme: it is enough that the interstate travel or the use of interstate facilities makes easier or facilitates the underlying activity.*

*Perrin*, 580 F.2d at 736 (emphasis added). On appeal, the Supreme Court affirmed the decision in *Perrin* on grounds unrelated to the sufficiency of the interstate nexus stating that was "no longer at issue." *Perrin*, 444 U.S. at 50, 100 S.Ct. at 318. The Court did, however, distinguish *Rewis* as a case involving a Travel Act prosecution where "[t]here was no evidence that Rewis had employed interstate facilities to conduct his numbers operation[.]" *Id.* The Court further noted that in *Rewis* the concern was with "the tenuous interstate commerce element." *Id.*

Again, in *United States v. Jones*, 642 F.2d 909 (5th Cir.1981), the court stated that "[a]s long as the interstate travel or use of the interstate facilities and the subsequent facilitating act make the unlawful activity easier, the jurisdictional requisites under § 1952 are complete." *Jones*, 642 F.2d at 913. In *Jones*, the defendant was alleged to have traveled from Oklahoma to Texas to cash checks received in payment of gambling debts incurred in Oklahoma. The drawer of the checks was a Texas resident who visited the defendant's gambling club in Oklahoma. Upholding the

defendant's conviction, the court observed that

[a]ttempts to gather the wagered funds which involve the use of interstate facilities can be an essential part of the gambling enterprise. *This is a strong case of interstate involvement facilitating the collection of gambling proceeds.* Evidently, Jones could not have cashed the check locally, but instead was forced to drive to Tom Bean, Texas, to collect his funds. Only by traveling interstate could Jones realize the illegal profits.

*Jones,* 642 F.2d at 913 (emphasis added).

In *United States v. Pecora,* 693 F.2d 421 (5th Cir.1982), the defendant raised the issue whether the federal courts "may assume jurisdiction over this local bribery case, involving only Louisiana residents ... on the basis of a single interstate telephone call...." The court concluded that under the facts presented there could be no doubt that the phone call in question "facilitated and made easier the bribery scheme," and stated that

we can discern in the Travel Act no exception for casual and incidental occurrences or for "happenstance" ones. Its language is straightforward and comprehensive.

*Pecora,* 693 F.2d at 424. Nevertheless, in *United States v. Garrett,* 716 F.2d 257 (5th Cir.1983), the court found it necessary to analyze the nature of the interstate nexus, an interstate telephone call, in order to consider the defendant's claim that jurisdiction was inappropriate under the Travel Act since the telephone call did not facilitate, or only incidentally facilitated, unlawful activity. Though noting the language in *Pecora* that the Travel Act contains no exception for casual and incidental occurrences, the court went on to state that "the telephone call in the present case requesting funds for bribery is no more incidental or fortuitous than the calls invoking the Travel Act in *Perrin* and *Pecora,* found to be sufficient to sustain jurisdiction." *Garrett,* 716 F.2d at 265–66. That is, despite the court's apparent position that fortuitous or incidental interstate involvement is sufficient to invoke the Travel Act, the court went on to determine whether the call was in fact incidental or fortuitous and concluded it was not. Moreover, the court in *Garrett* noted that the Supreme Court, since its decision in *Rewis,* has explained that its concern in *Rewis* was not with the local nature of the predicate interstate gambling operation involved in that case, but rather with the "tenuous interstate commerce element." *Id.* at 265 (quoting *Perrin,* 444 U.S. at 50, 100 S.Ct. at 318).

The court's concern in the case at bar, like the Supreme Court in *Rewis,* is with the tenuous connection between the defendant's alleged bribery scheme and interstate commerce. This case, like *Isaacs,* presents

a situation in which [checks], written by [a Mississippi] resident, payable to [a Mississippi] resident, and drawn on [a Mississippi] bank, entered [Louisiana and Tennessee] solely because of the fortuitous organization of the federal reserve system....

*United States v. Rauhoff,* 525 F.2d 1170 (7th Cir.1975) (describing *Isaacs* ). Moreover, this case, unlike the Fifth Circuit cases discussed herein, is one in which the defendant took no affirmative act which could be construed as implicating interstate commerce. For example, in *Perrin, Pecora* and *Garrett,* although the basis for Travel Act jurisdiction in each case was nothing more than a single interstate telephone call, each of the calls was made by defendants in one state to individuals in other states for purposes directly related to the underlying unlawful activity. And in *Jones,* the defendant himself actually travelled in interstate commerce for reasons related to his gambling activities. Additionally, in each of the cited cases, unlike the present case, the telephone calls were intended to and did directly facilitate the underlying unlawful activity. In sum, it is the court's opinion that in the case at bar, there can be but one reasonable conclusion—that the clearing of local checks given by a local resident to local residents which happened to have crossed state lines in the clearing process is too tenuous a connection with interstate commerce to support Travel Act jurisdiction. Accordingly, the court is of the opinion that de-

fendant's motion to dismiss should be granted.